EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Kyong Barry
    132 Milwaukee Blvd. South
    Algona, WA 98001
        Plaintiff,
Iris Scott
    584 Kinnebrook Rd.
    Worthington, MA 01098
        Plaintiff,

v.

United Food & Commercial Workers (UFCW)
    1775 K St., N.W.
    Washington, D.C. 20006
        Defendant,

UFCW International President Marc Perrone
    1775 K St., N.W.
    Washington, D.C. 20006
        Defendant,

UFCW International Secretary-Treasurer
Milton Jones
    1775 K St., N.W.
    Washington, D.C. 20006
        Defendant.

Demand for a Jury Trial

Civil Action No. 1:24-cv-01137

## **COMPLAINT**

### Introduction

1.    Plaintiffs and other rank-and-file members of the defendant United Food and Commercial Workers ("UFCW") are far from having an equal right to vote in elections for delegates to the UFCW's Convention, the highest governing body. In violation of Section 101(a)(1) and (2) of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 411(a)(1) and (2), the defendant UFCW has failed to extend the right to vote on the same basis

of one-member, one-vote from local to local, but allows significant, arbitrary, and unreasonable local-by-local variations in the equal right to vote, in the right to proportional representation, in the right even to elect all the delegates allotted to the local, and in the right to adequate notice of the elections. Nor do they have the enhanced right to discuss and debate that a genuinely equal right to vote would occasion. As set out below, there is no reasonable basis for variation in this equal right to vote and the same right for robust debate from one local to the next, and no justification for the facial violation of the law as a reasonable rule or regulation in the provisos of Section 101(a)(1) or 101(a)(2). The extreme variation in the voting power of a member from one local to the next and the proportional allotment of delegates from one local to the next is set out in paragraphs 15 and 16 below. These variations that dilute the right to vote include both the largest and smallest UFCW locals. In the case of the largest locals, they have the fewest delegates per member, even as these largest locals have come to account for a greater portion of the membership due to the concentration of the food industry. In the case of the smallest locals, the requirement that the president and secretary treasurer be a delegate *ex officio,* without separate election, means that most of that local's delegation is pre-selected without any voting at all at the time of the election. In both the largest and smallest locals, the UFCW arbitrarily fails to extend an equal right to vote and to have the debate that a lawful system of representation under the LMRDA would afford.

2. In addition, as set out below, the current system of representation is designed to limit the election of delegates who are rank-and-file members and not already officers or staff employees of the UFCW or its locals. It is designed to limit the voice of Plaintiffs and other members or their ability to express their views through the election of delegates who are not

salaried union employees and likely to have a different perspective on the issues before the Convention, ranging from approval of dues to election of officers.

3. Finally, the defendant UFCW unlawfully condones or allows other significant variations from local to local in the right to vote and the right to an equally informed vote with respect to the election of delegates. As set out below and in violation of Sections 101(a)(1) and (2) of the LMRDA, the defendant UFCW condones or allows local officers for alleged "financial reasons" to cancel elections for all the delegates allotted or to decline to send all such delegates once elected to the Convention. Nor is there any uniform practice in the notice and information about the election and the issues before the Convention given to the members in advance of the elections, and the variation in such information from local to local and lack of uniformity denies such members the right to an informed vote. It is effectively left up to the local to decide how much information to provide.

4. As members of the UFCW, Plaintiffs Kyong Barry and Iris Scott have suffered a diminution in their own rights under Section 101(a)(1) and 101(a)(2) of the LMRDA, 29 U.S.C. §§ 411(a) and (2), as Plaintiff Barry is in a large local which has an unlawful and unreasonable cap on the number of delegates to be elected, and Plaintiff Scott is in a small local in which *ex officio* appointment of the president and secretary treasurer as delegates leaves a smaller fraction of the delegation up for election. Plaintiffs also suffer from the denial of these rights to other members as the systems of representation is designed to limit the accountability of the UFCW to its members and their right to determine the policies of the UFCW through its highest governing body. Plaintiffs seek a declaratory judgment that such actions described above are in violation of Section 101(a)(1) and (2) of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411(a)(1) and (2), and request damages and injunctive relief.

## Parties

5. Plaintiff Kyong Barry is a member of Local 3000 of the UFCW, which is located in this judicial district.

6. Plaintiff Iris Scott is a member of Local 1459 of the UFCW, which is located in this judicial district.

7. Defendant United Food and Commercial Workers is the parent labor organization of these local unions, and has its principal place of business in Washington, D.C.

8. Defendant Marc Perrone is the international president of the Defendant UFCW and a member of the UFCW's Executive Council.

9. Defendant Milton Jones is the international secretary treasurer of the Defendant UFCW and is also a member of the UFCW's Executive Council.

## Jurisdiction

10. The jurisdiction of this court arises under Section 102 of the LMRDA, 29 U.S.C. § 412.

11. Venue lies in this judicial district because Defendant UFCW is based in this judicial district.

## Facts

12. Every five years, the Defendant UFCW holds a convention which is the highest governing body of the UFCW.

13. The last UFCW Convention, held in 2023, consisted of delegates from the 219 local unions of the UFCW.

14. The total number of delegates from these local unions was 1,321.

15. Article 15 of the UFCW Constitution allocates Convention delegates to each local partly but not proportionally based on the number of members in each local, or otherwise on the basis of "one person, one vote".

16. As set out in Article 15, the allocation of delegates is as follows:

| Number of Active Members in Local Union | Number of Delegates and Votes |
|---|---|
| 1 - 500 | 1 |
| 501 - 1,000 | 2 |
| 1,001 - 1,750 | 3 |
| 1,751 - 2,500 | 4 |
| 2,501 - 3,250 | 5 |
| 3,251 - 4,000 | 6 |
| 4,001 - 4,750 | 7 |
| 4,751 - 5,500 | 8 |
| 5,501 - 6,250 | 9 |
| 6,251 - 7,000 | 10 |
| 7,001 - 7,750 | 11 |
| 7,751 - 8,500 | 12 |
| 8,501 - 9,250 | 13 |
| 9,251 - 10,000 | 14 |
| 10,001 - 10,750 | 15 |
| 10,751 - 11,500 | 16 |
| 11,501 - 12,250 | 17 |
| 12,251 - 13,000 | 18 |
| 13,001 - 13,750 | 19 |
| 13,751 - 14,500 | 20 |
| 14,501 - 16,000 | 21 |
| 16,001 - 18,000 | 22 |
| 18,001 - 21,000 | 23 |
| 21,001 - 24,000 | 24 |
| 24,001 - 29,000 | 25 |
| 29,001 - 34,000 | 26 |
| 34,001 - 39,000 | 27 |
| 39,001 - 44,000 | 28 |
| 44,001 - 49,000 | 29 |

And an additional delegate and vote for each 5,000 active members, or fraction thereof, above 49,000 active members.

**Dramatically Diminished Voice for Members of Larger Locals**

17. As these numbers show, delegates are not apportioned on the basis of "one person, one vote" or in a manner that assures the members of the UFCW have an equal right to elect and be represented by delegates at the UFCW Conventions.

18. In the case of larger locals, the more members that local has, the smaller, and thus more unequal and disproportionate, is those members' right to vote and be represented at the UFCW Conventions.

19. This extreme departure from equal proportional representation increases as the size of the local increases, so that members in smaller locals have an effective weighted vote greater than the vote of members in the larger locals.

20. As a local increases in number of members, the disparity between the value of its members' right to vote and the value of smaller locals' members' right to vote becomes dramatically greater.

21. While the first delegate apportioned to a local never represents more than 500 members, the final delegates apportioned to the largest locals represent 5,000 members.

22. This disparity means that members in smaller locals have voting power, at the Convention, far greater than members of larger locals.

23. Over time this variation in "one member, one vote" has become worse, as industry concentration has led to larger sized locals, so that an increasing number of members in the UFCW have a diminished right to vote, even as members of the smaller locals become a smaller percentage of the membership but have disproportionately greater representation.

### Lack of Delegate Elections in Small Locals

24. While members of smaller locals have greater proportional representation at the UFCW Convention under the Article 15 allocation of delegates, the UFCW Constitution has

another provision that diminishes the number of possible contested seats in smaller locals, with some small locals not having elections occur at all.

25. Article 15(E) of the UFCW Constitution provides that the president and secretary treasurer of each local—elected once every three years—are *ex officio* delegates.

26. Under the UFCW Constitution, members of locals consisting of 500 or fewer members in total are entitled to one delegate, and those in locals of 500 to 1,000 are entitled to two.

27. As a result, in these cases, there is no election for delegates at all. In other cases, *e.g.*, where the local has more than 1,000 members, while there may be an election for delegates, the number of available delegate positions is artificially reduced because the president and secretary treasurer of each local are *ex officio* delegates.

28. The UFCW Constitution does not require locals to inform members during local union officer elections that their officers are also automatically delegates.

29. The qualities and relevant political issues members might judge a candidate for local union office as to matters involved in managing the local are entirely distinct from those on which members might judge a candidate for national convention delegate, voting on national union policy.

30. Nor can a prior vote in a local election be an informed vote as issues may arise and new candidacies for office could be declared years after the local officers who serve *ex officio* are elected, and members thus have no voice on the issues and candidacies that will be significant at the time of the Convention.

31. Furthermore, the *ex officio* delegates are, in many cases, employees of the UFCW or its locals, and the existence of these *ex officio* delegates limits the possibility of members

electing delegates who are not already employees or staff of the UFCW and its locals and who would have proved more likely to oppose dues increases and related initiatives than delegates who are paid staff.

32. While the loss in the right of election is complete in the smallest locals, there is the same loss of the right of election for at least two delegate positions in all locals, and the same structural bias against rank-and-file delegates who are not employees of the UFCW and who have proved more likely to oppose dues increases and represent the views of the membership in doing so.

33. In addition, the UFCW condones the practice of officer delegates increasing their influence in their respective local delegates by refusing to pay to send rank-and-file delegates to the convention.

34. The UFCW leaves local officers free to bar rank-and-file delegates from attending by purporting not to have sufficient funds to send them.

35. By doing so, local officers are free to limit the political voice and diversity of delegations by preferring *ex officio* delegates over rank-and-file delegates.

36. As a result of these rules and policies, the right to vote is not equal or extended on equal terms but varies from local to local based on the *ad hoc* decisions made by local officers as to whether all elected delegates should attend.

37. As a result, over time and especially since 2008, the number of total delegates at UFCW Conventions has sharply decreased.

38. On information and belief, approximately 2,500 delegates attended the UFCW Convention in 2008.

39. By contrast, and again on information and belief, approximately 1,600 delegates attended the UFCW Convention in 2016.

40. In the case of Local 1000 in the last convention, for example, the Local sent only the union officer delegates and refused to let the elected rank-and-file delegates attend.

41. In addition, the UFCW does not require locals to give notice adequate to reach the average or typical member of the elections.

42. The notice and other information and outreach that locals conduct also varies from local to local. In some locals, the inclusion of the election notice in small type on the back pages of a union newsletter that few members thoroughly read is neither adequate nor equal to the notice and publicity that other locals provide. This lack of uniformity in notice and publicity about the election and in many cases the inadequacy of notice calculated in good faith to reach the members denies an equal right to an informed vote.

43. Nor is there any uniform practice existing in every local to provide minimal information as to the subject matter of proposals, when known in advance, that will be taken up at the Convention.

44. This variation in access to information about the Convention is especially great with respect to the practice of the UFCW national officers who resign instead of serving their full terms so that the UFCW Executive Board and not the Convention will fill the vacancies.

45. Such information, which is necessary for an informed vote as to filling positions of leadership, is held closely and known to some but not all members, and it is intended to deny not only delegates but the members who elect them any knowledge prior to the Convention as to who will be taking these leadership positions.

### Count I: Denial of Equal Right to Vote – Allocation of Delegates

46. Section 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1), states as follows:

> Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

47.     The proviso that the equal right to vote is subject to "reasonable rules and regulations" means only that the right is subject to facially neutral time, manner, and place regulations.

48.     In violation of Section 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1), and by the allocation of delegates set out in Article 15 of the UFCW Constitution, Defendants deny members like Plaintiffs Kyong Barry and Iris Scott, in Locals 3000 and 1459 respectively, of their equal right to vote by failing to extend an equal right to vote to every member in every local.

49.     This Court has authority to conform the UFCW Constitution to meet the requirements of Section 101(a)(1) of the LMRDA. As set out in Section 101(b) of the LMRDA, 29 U.S.C. § 411(b), Congress prohibits any union constitutional provision, including Article 15 of the UFCW Constitution, which is conflict with the equal right to vote in 29 U.S.C. § 411(a)(1).

50.     Plaintiffs seek no relief under the provisions of Title IV of the LMRDA, to overturn any election already conducted within the meaning of 29 U.S.C. § 483, but only to conform the UFCW Constitution and voting rules prospectively to comply with Section 101(a)(1). Accordingly, while the Secretary of Labor has issued an interpretative regulation of Title IV as not requiring the conduct of a new election because of disparity in delegate allocation, the Secretary of Labor has never determined, and has no authority to determine, what the equal right to vote under 29 U.S.C. § 411(a)(1) requires. Instead of the Secretary, members like Plaintiffs have the exclusive right to sue under 29 U.S.C. § 411(a)(1) and 29 U.S.C. § 412 to reform the UFCW Constitution to comply with the equal right to vote.

### Count II: Denial of Equal Right to Vote –
### *Ex Officio* Delegates Serving in Preference to Elected Delegates

51.     In violation of Section 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1), and by requiring the local union president and secretary treasurer in each UFCW local to serve *ex officio* as delegates, without being elected separately to such position, the UFCW deprives all members of an equal and effective right to vote for delegates of their own choosing to present their views at the Convention without having them pre-selected years in advance before the questions to be decided at the Convention are known or clear.

52.     The use of *ex officio* delegates also has a disparate impact on the equal right of members to vote and run for office, in violation of Section 101(a)(1) of the LMRDA. The percent or proportion of *ex officio* delegates in the allotted number of delegates is greater in smaller locals. In the smallest locals, the use of *ex officio* delegates leads to the outright denial in the smallest locals of a nomination meeting and any election at all. In other locals, the *ex officio* delegates still make up a large fraction of the allotted delegates and thereby deprives the rank-and-file members of having the numbers to form candidate slates and to pool resources to express viewpoints different from the *ex officio* delegates.

53.     Likewise, this practice has a disparate effect on the right to speak and debate from local to local, in violation of Section 101(a)(2) of the LMRDA, as it precludes or limits the possibility of election campaigns in which members can express their views. As such, it is unlawful viewpoint discrimination and has the intent and effect of limiting political debate and speech without serving a purpose necessary to protect the UFCW as an institution.

54.     While the Secretary of Labor has determined that the use of *ex officio* delegates will not require the conduct of a new election, or violate any provision of Title IV of the LMRDA, plaintiffs do not seek to challenge any election "already conducted" within the meaning of the law.

11

Rather, under Section 102 of the LMRDA, 29 U.S.C. § 412, plaintiffs seek to conform the UFCW Constitution to the provisions of Section 101(a)(1) and Section 101(a)(2) of the LMRDA, over which the Secretary has no authority or jurisdiction, and which prohibit the disparate impact of a system of such large scale *ex officio* representation on the right to vote and speak.

**Count III: Denial of Equal Right to Vote –
Failure to Hold Elections and Send Delegates for Financial Reasons**

55. In further violation of the equal right to vote under Section 101(a)(1) of the LMRDA, and by the acts set forth above, the UFCW unlawfully permits its local union officers not to hold elections for all the delegates allotted to their locals or to refuse or fail to send elected delegates.

56. These *ad hoc* decisions by local officers allegedly for "financial reasons" without any criteria or review are not "reasonable rules and regulations" within the meaning of the proviso of Section 101(a)(1) for denying altogether the right to vote.

57. The UFCW is responsible for such unlawful variation from local to local in the right of members to vote for delegates at its Convention in violation of Section 101(a)(1) of the LMRDA.

**Count IV: Denial of Equal Right to Vote – Denial of Right to an Informed Vote**

58. By the acts set forth above, and in violation of Section 101(a)(1) of the LMRDA, the UFCW has no uniform practice from local to local to ensure that members are equally well informed of their rights under the LMRDA and the right of rank-and-file members to run for delegates and right to serve as delegates if elected.

59. In contrast to some UFCW locals, which publicize such elections, other UFCW locals provide only the barest reference, often buried in small print in union magazines, not

calculated to make members aware that such elections are being held or that they have the right to nominate themselves or others as delegated.

60. In addition, in violation of the right of members to an informed vote under Section 101(a)(1) of the LMRDA, the UFCW provides no information as to the issues that may be considered at such Conventions, including actions upon dues and procedures for the nomination elections of officers at the Convention.

### Count V: Denial of Right to Express Views, Arguments, and Opinions by Limitation on Number of Elections

61. In violation of Section 101(a)(2) of the LMRDA, which protects the right of members to express "views, arguments, or opinions," and to "express [at meetings of UFCW locals] views[] upon candidates in an election [held by a UFCW local]," the UFCW has maintained a system of representation that unreasonably restricts the opportunity of rank-and-file members to exercise this right, and serves no valid purpose for the UFCW as an institutions.

62. Specifically the UFCW has maintained a system that steadily reduces the number of Convention delegates who would be otherwise elected under one member one vote in larger locals, maintains *ex officio* representation that eliminates all or nearly all elections for delegates in smaller locals, allows locals to cancel elections altogether for vague financial reasons, and otherwise seeks to limit debate and expression of views that might take place both in and outside of local meetings if such elections were held.

63. By the acts set forth above, in violation of Section 101(a)(2) of the LMRDA, the UFCW has maintained a system that seeks to limit opportunities for debate within local unions and at local meetings prior to the holding of the UFCW Convention. That system has had the intent and effect of preventing the robust political debate that the holding of the Convention should occasion, and in some cases, eliminates any debate at all.

WHEREFORE, Plaintiffs pray this Court to:

A. Declare that under Section 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1) and by the acts set forth above, Defendant UFCW has unlawfully denied the Plaintiffs and other UFCW members of the right to an equal vote from one local to the next, including the right to an informed and uniform right to vote.

B. Declare that, in violation of Section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2), Defendant UFCW has unlawfully restricted or limited the ability of Plaintiffs and other members to express their views, arguments and opinions by unfair allotment of delegates, use of *ex officio* delegates, and other means, including the expression of views, arguments and opinions at meetings of the various locals at the time candidates might have been nominated under a fair system of representation.

C. Order Defendant UFCW to take such actions and to submit a plan for approval of this Court to redress these violations, including amendment of the UFCW Constitution, to conform with Section 101(a) as required by Section 101(b) of the LMRDA, 29 U.S.C.§ 411(b).

D. Grant nominal damages to each Plaintiff.

E. Grant legal fees and costs to Plaintiffs and such other relief as may be appropriate.

Respectfully submitted,

Dated: April 22, 2024

By: */s/ Thomas H. Geoghegan*
Thomas H. Geoghegan
Bar No. IL0104
DESPRES, SCHWARTZ,
& GEOGHEGAN, LTD.
77 West Washington Street, Suite 711

14

          Chicago, Illinois 60602
          Phone: (312) 372-2511
          Fax: (312) 372-7391
          tgeoghegan@dsgchicago.com