EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Kyong Barry and Iris Scott,<br><br>    Plaintiffs,<br><br>    v.<br><br>United Food & Commercial Workers, *et al.*,<br><br>    Defendants. | Hon. Trevor N. McFadden<br><br>Civil Action No. 1:24-cv-01137 |

**PROPOSED FIRST AMENDED COMPLAINT**

Introduction

1.   Plaintiffs and other rank-and-file members of the defendant United Food and Commercial Workers ("UFCW") are far from having an equal right to vote in elections for delegates to the UFCW's Convention, the highest governing body. In violation of Section 101(a)(1) and (2) of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411(a)(1) and (2), the defendant UFCW has failed to extend the right to vote on the same basis of one-member, one-vote from local to local, but allows significant, arbitrary, and unreasonable local-by-local variations in the equal right to vote, in the right to proportional representation, in the right even to elect all the delegates allotted to the local, and in the right to adequate notice of the elections. Nor do they have the enhanced right to discuss and debate that a genuinely equal right to vote would occasion. As set out below, there is no reasonable basis for variation in this equal right to vote and the same right for robust debate from one local to the next, and no justification for the facial violation of the law as a reasonable rule or regulation in the provisos of Section 101(a)(1) or 101(a)(2). The extreme variation in the voting power of a member from one local to the next and the proportional allotment of delegates from one local to the next is set out in

1

paragraphs 15 and 16 below. These variations that dilute the right to vote include both the largest and smallest UFCW locals. In the case of the largest locals, they have the fewest delegates per member, even as these largest locals have come to account for a greater portion of the membership due to the concentration of the food industry. In the case of the smallest locals, the requirement that the president and secretary treasurer be delegates *ex officio,* without separate election, means that most of that local's delegation is pre-selected without any voting at all at the time of the election. In both the largest and smallest locals, the UFCW arbitrarily fails to extend an equal right to vote and to have the debate that a lawful system of representation under the LMRDA would afford.

2.    In addition, as set out below, the current system of representation is designed to limit the election of delegates who are rank-and-file members and not already officers or staff employees of the UFCW or its locals. It is designed to limit the voice of Plaintiffs and other members or their ability to express their views through the election of delegates who are not salaried union employees and likely to have a different perspective on the issues before the Convention, ranging from approval of dues to election of officers.

3.    Finally, the defendant UFCW unlawfully condones or allows other significant variations from local to local in the right to vote and the right to an equally informed vote with respect to the election of delegates. As set out below and in violation of Sections 101(a)(1) and (2) of the LMRDA, the defendant UFCW condones or allows local officers for alleged "financial reasons" to cancel elections for all the delegates allotted or to decline to send all such delegates once elected to the Convention. Nor is there any uniform practice in the notice and information about the election and the issues before the Convention given to the members in advance of the elections, and the variation in such information from local to local and lack of uniformity denies

such members the right to an informed vote. It is effectively left up to the local to decide how much information to provide.

4. As members of the UFCW, Plaintiffs Kyong Barry and Iris Scott have suffered a diminution in their own rights under Section 101(a)(1) and 101(a)(2) of the LMRDA, 29 U.S.C. 411(a) and (2), as Plaintiff Barry is in a large local that has an unlawful and unreasonable cap on the number of delegates to be elected, and Plaintiff Scott is in a small local in which *ex officio* appointment of the president and secretary treasurer as delegates leaves a smaller fraction of the delegation up for election. Plaintiffs also suffer from the denial of these rights to other members as the systems of representation is designed to limit the accountability of the UFCW to its members and their right to determine the policies of the UFCW through its highest governing body. Plaintiffs seek a declaratory judgment that such actions described above are in violation of Section 101(a)(1) and (2) of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411(a)(1) and (2), and request injunctive relief.

**Parties**

5. Plaintiff Kyong Barry is a member of Local 3000 of the UFCW, which is located in this judicial district.

6. Plaintiff Iris Scott is a member of Local 1459 of the UFCW, which is located in this judicial district.

7. Defendant United Food and Commercial Workers is the parent labor organization of these local unions and has its principal place of business in Washington, D.C.

8. Defendant Marc Perrone is the international president of the Defendant UFCW and a member of the UFCW's Executive Council.

9. Defendant Milton Jones is the international secretary treasurer of the Defendant UFCW and is also a member of the UFCW's Executive Council.

3

**Jurisdiction**

10. The jurisdiction of this court arises under Section 102 of the LMRDA, 29 U.S.C. § 412.

11. Venue lies in this judicial district because Defendant UFCW is based in this judicial district.

**Facts**

12. Every five years, the Defendant UFCW holds a convention which is the highest governing body of the UFCW.

13. The last UFCW Convention, held in 2023, consisted of delegates from the 219 local unions of the UFCW.

14. The total number of delegates from these local unions was 1,321.

15. Article 15 of the UFCW Constitution allocates Convention delegates to each local partly but not proportionally based on the number of members in each local, or otherwise on the basis of "one person, one vote".

16. As set out in Article 15, the allocation of delegates is as follows:

| Number of Active Members in Local Union | Number of Delegates and Votes |
|---|---|
| 1 - 500 | 1 |
| 501 - 1,000 | 2 |
| 1,001 - 1,750 | 3 |
| 1,751 - 2,500 | 4 |
| 2,501 - 3,250 | 5 |
| 3,251 - 4,000 | 6 |
| 4,001 - 4,750 | 7 |
| 4,751 - 5,500 | 8 |
| 5,501 - 6,250 | 9 |
| 6,251 - 7,000 | 10 |
| 7,001 - 7,750 | 11 |
| 7,751 - 8,500 | 12 |
| 8,501 - 9,250 | 13 |
| 9,251 - 10,000 | 14 |

| | |
|---|---|
| 10,001 - 10,750 | 15 |
| 10,751 - 11,500 | 16 |
| 11,501 - 12,250 | 17 |
| 12,251 - 13,000 | 18 |
| 13,001 - 13,750 | 19 |
| 13,751 - 14,500 | 20 |
| 14,501 - 16,000 | 21 |
| 16,001 - 18,000 | 22 |
| 18,001 - 21,000 | 23 |
| 21,001 - 24,000 | 24 |
| 24,001 - 29,000 | 25 |
| 29,001 - 34,000 | 26 |
| 34,001 - 39,000 | 27 |
| 39,001 - 44,000 | 28 |
| 44,001 - 49,000 | 29 |

And an additional delegate and vote for each 5,000 active members, or fraction thereof, above 49,000 active members.

**Dramatically Diminished Voice for Members of Larger Locals**

17. As these numbers show, delegates are not apportioned on the basis of "one person, one vote" or in a manner that assures the members of the UFCW have an equal right to elect and be represented by delegates at the UFCW Conventions.

18. In the case of larger locals, the more members that local has, the smaller, and thus more unequal and disproportionate, is those members' right to vote and be represented at the UFCW Conventions.

19. This extreme departure from equal proportional representation increases as the size of the local increases, so that members in smaller locals have an effective weighted vote greater than the vote of members in the larger locals.

20. As a local increases in number of members, the disparity between the value of its members' right to vote and the value of smaller locals' members' right to vote becomes dramatically greater.

5

21. While the first delegate apportioned to a local never represents more than 500 members, the final delegates apportioned to the largest locals represent 5,000 members.

22. This disparity means that members in smaller locals have voting power, at the Convention, far greater than members of larger locals.

23. Take, as an example, Plaintiff Barry's local, Local 3000. Her local has, according to their most recent LM-2 filing with the Department of Labor, 52,150 members.

24. Under the allocation laid out in the UFCW Constitution, Local 3000 is entitled to thirty delegates.

25. Compare that to the smallest local in the UFCW, Local 215.

26. According to Local 215's LM-2 filing this year with the Department of Labor, Local 215 has 4 members.

27. Under the allocation laid out in the UFCW Constitution, Local 215 is entitled to one delegate.

28. That means the voting strength of a member of Local 215, calculated as the number of delegates a local is entitled to divided by the number of members of the local electing those delegates, is 0.25.

29. By contrast, the voting strength of a member of Local 3000 is 0.000575.

30. A member of Local 215 has over 434 times the voting strength of a member of Local 3000.

31. According to Department of Labor records, of the 224 locals in the UFCW, there are 140 locals that are smaller than 500 members but that are still afforded one delegate, with 140 delegates representing the 15,036 members in those 140 locals.

32. Those 15,036 members each have, on average, a voting strength of 0.009311, over 16 times as much voting power as a member of Local 3000.

33. The size distribution of the UFCW's local unions is reflected in this table:

| Number of Delegates Allocated to a Local | Number of Locals with this Number of Delegates |
|---|---|
| 1 | 140 |
| 2 | 9 |
| 3 | 6 |
| 4 | 4 |
| 5 | 3 |
| 6 | 3 |
| 7 | 6 |
| 8 | 2 |
| 9 | 2 |
| 10 | 3 |
| 11 | 3 |
| 12 | 2 |
| 13 | 4 |
| 14 | 1 |
| 15 | 3 |
| 16 | 1 |
| 17 | 0 |
| 18 | 4 |
| 19 | 2 |
| 20 | 3 |
| 21 | 1 |
| 22 | 4 |
| 23 | 4 |
| 24 | 3 |
| 25 | 8 |
| 26 | 2 |
| 27 | 0 |
| 28 | 0 |
| 29 | 0 |
| 30 | 1 |

34. Over time this variation in "one member, one vote" has become worse, as industry concentration and UFCW policy encouraging mergers have led to larger sized locals, so that an increasing number of members in the UFCW have a diminished right to vote, even as members of

the smaller locals become a smaller percentage of the membership but have disproportionately greater representation.

### Lack of Delegate Elections in Small Locals

35. While members of smaller locals have greater proportional representation at the UFCW Convention under the Article 15 allocation of delegates, the UFCW Constitution has another provision that diminishes the number of possible contested seats in smaller locals, with some small locals not having elections occur at all.

36. Article 15(E) of the UFCW Constitution provides that the president and secretary treasurer of each local—elected once every three years—are *ex officio* delegates.

37. Article 15(E) uses "shall" language, meaning that every local, including the locals of both Plaintiffs, must send their president and secretary treasurer as their first two delegates.

38. Under the UFCW Constitution, members of locals consisting of 500 or fewer members in total are entitled to one delegate, and those in locals of 500 to 1,000 are entitled to two.

39. As a result, in these cases, there is no election for delegates at all. In other cases, *e.g.*, where the local has more than 1,000 members, while there may be an election for delegates, the number of available delegate positions is artificially reduced because the president and secretary treasurer of each local are *ex officio* delegates.

40. The UFCW Constitution does not require locals to inform members during local union officer elections that their officers are also automatically delegates.

41. The qualities and relevant political issues members might judge a candidate for local union office as to matters involved in managing the local are entirely distinct from those on

8

which members might judge a candidate for national convention delegate, voting on national union policy.

42.     Nor can a prior vote in a local election be an informed vote as issues may arise and new candidacies for office could be declared years after the local officers who serve *ex officio* are elected, and members thus have no voice on the issues and candidacies that will be significant at the time of the Convention.

43.     Furthermore, the *ex officio* delegates are, in many cases, employees of the UFCW or its locals, and the existence of these *ex officio* delegates limits the possibility of members electing delegates who are not already employees or staff of the UFCW and its locals and who would have proved more likely to oppose dues increases and related initiatives than delegates who are paid staff.

44.     While the loss in the right of election is complete in the smallest locals, there is the same loss of the right of election for at least two delegate positions in all locals, and the same structural bias against rank-and-file delegates who are not employees of the UFCW and who have proved more likely to oppose dues increases and represent the views of the membership in doing so.

45.     In addition, the UFCW condones the practice of officer delegates increasing their influence in their respective local delegates by refusing to pay to send rank-and-file delegates to the convention.

46.     The UFCW leaves local officers free to bar rank-and-file delegates from attending by purporting not to have sufficient funds to send them.

47.     By doing so, local officers are free to limit the political voice and diversity of delegations by preferring *ex officio* delegates over rank-and-file delegates.

48. As a result of these rules and policies, the right to vote is not equal or extended on equal terms but varies from local to local based on the *ad hoc* decisions made by local officers as to whether all elected delegates should attend.

49. As a result, over time and especially since 2008, the number of total delegates at UFCW Conventions has sharply decreased.

50. On information and belief, approximately 2,500 delegates attended the UFCW Convention in 2008.

51. By contrast, and again on information and belief, approximately 1,600 delegates attended the UFCW Convention in 2016.

52. In the case of Local 1000 in the last convention, for example, the Local sent only the union officer delegates and refused to let the elected rank-and-file delegates attend, despite, with 10,122 members, being entitled to 15 delegates.

53. In addition, the UFCW does not require locals to give notice adequate to reach the average or typical member of the elections.

54. The notice and other information and outreach that locals conduct also varies from local to local. In some locals, the inclusion of the election notice in small type on the back pages of a union newsletter that few members thoroughly read is neither adequate nor equal to the notice and publicity that other locals provide. This lack of uniformity in notice and publicity about the election and in many cases the inadequacy of notice calculated in good faith to reach the members denies an equal right to an informed vote.

55. Nor is there any uniform practice existing in every local to provide minimal information as to the subject matter of proposals, when known in advance, that will be taken up at the Convention.

56. This variation in access to information about the Convention is especially great with respect to the practice of the UFCW national officers who resign instead of serving their full terms so that the UFCW Executive Board and not the Convention will fill the vacancies.

57. Such information, which is necessary for an informed vote as to filling positions of leadership, is held closely and known to some but not all members, and it is intended to deny not only delegates but the members who elect them any knowledge prior to the Convention as to who will be taking these leadership positions.

**Plaintiffs are Unlikely to Leave Their Locals,
and their Locals are Unlikely to Dramatically Change Size**

58. The size of Local 3000 is unlikely to decrease dramatically for the foreseeable future.

59. As reflected in the Declaration of Steve Williamson (attached as Exhibit A-1), the size of the local union has never seen a significant decrease in the 30 years since he joined Local 3000's predecessor.

60. Put another way, the current members of Local 3000, including Plaintiff Barry, have been represented in a labor organization that has been continually increasing in membership size because of mergers with other local unions, active organizing, and representation of employees in a variety of industries.

61. Local 3000 is an amalgamated local union, representing workers at a wide variety of employers in a wide variety of industries, including grocery, retail, food production and processing, laundry, healthcare, legal services, and the public sector.

62. This diversification of membership protects Local 3000 from significant decreases in membership, and, as stated in the Declaration of Steve Williamson, there have been none nor

any plausible or reasonable scenario where any significant decrease of membership in Plaintiff Barry's Local would or could occur in the period prior to the next UFCW Convention.

63. If conditions specific to an employer or industry (*e.g.*, employer bankruptcy, industrial decline) cause a decrease in one segment of the union's membership, it is likely that conditions specific to another employer or industry will result in similar growth in the union's membership.

64. Local 3000 also has the largest organizing department of any UFCW local union, which means new members are frequently organizing into the union.

65. For all of these reasons, it is implausible that Local 3000 will significantly decline in membership prior to the upcoming Convention, and is more likely to grow, only increasing the disparity in representation at the upcoming Convention.

66. Further, it is highly unlikely that Local 3000 would be split up into smaller local unions.

67. The UFCW has a policy of encouraging union mergers, and indeed, Local 3000 was formed by the merger of Local 1439 and Local 21, which itself formed out of the merger of seven locals over several years in the mid-2000s.

68. While growth through mergers is common, the splitting up of locals in the UFCW virtually never happens, and there is no plausible scenario where any such unprecedented break with past history would take place prior to the next Convention.

69. Splitting the local union up would require the approval of the rank-and-file union members on Local 3000's executive board, who would be unlikely to diminish their own power at the bargaining table in that way.

70. The size and diversity of Local 3000 gives the local union enormous strength.

71. For instance, even if all of the grocery workers in Local 3000 felt it was necessary to go on strike, half the union would still be on the job, paying dues and supporting the strike fund to help the strikers stay out as long as necessary.

72. Additionally, Plaintiff Barry is firmly committed to maintaining her membership in Local 3000 prior to the next Convention, both for personal economic reasons and for political commitment to strengthening the labor movement generally and the UFCW and Local 3000 in particular.

73. She has been a member of Local 3000 and its predecessors for over 20 years and has enormous seniority at the Albertson's where she works.

74. Because of her long tenure, she is grandfathered-in to higher pay rates and benefits that she would lose if she moved to a different job in a different local union.

75. At a new local she would also lose much of her time on the job that results in a higher pay step based on her experience.

76. She would also be virtually certain to have a worse pension and worse health insurance if she switched jobs and unions.

77. Further, she is a longtime member of the local union's executive board and is a widely recognized leader committed to the work of her union.

78. As a longtime member of the UFCW, she is committed to increasing the accountability of the UFCW to its members and is determined to vindicate her own and the rights of other members under federal law to ensure this important goal by the time of the next Convention.

79. For all of these reasons, as a Local 3000 board member and union activist, she has no intention of leaving Local 3000—and thereby leaving the UFCW—prior to the next Convention.

**Count I: Denial of Equal Right to Vote – Allocation of Delegates**

80. Section 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1), states as follows:

> Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

81. The proviso that the equal right to vote is subject to "reasonable rules and regulations" means only that the right is subject to facially neutral time, manner, and place regulations.

82. In violation of Section 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1), and by the allocation of delegates set out in Article 15 of the UFCW Constitution, Defendants deny members like Plaintiffs Kyong Barry and Iris Scott, in Locals 3000 and 1459 respectively, of their equal right to vote by failing to extend an equal right to vote to every member in every local.

83. This Court has authority to conform the UFCW Constitution to meet the requirements of Section 101(a)(1) of the LMRDA. As set out in Section 101(b) of the LMRDA, 29 U.S.C. § 411(b), Congress prohibits any union constitutional provision, including Article 15 of the UFCW Constitution, which is conflict with the equal right to vote in 29 U.S.C. § 411(a)(1).

84. Plaintiffs seek no relief under the provisions of Title IV of the LMRDA, to overturn any election already conducted within the meaning of 29 U.S.C. § 483, but only to conform the UFCW Constitution and voting rules prospectively to comply with Section 101(a)(1). Accordingly, while the Secretary of Labor has issued an interpretative regulation of Title IV as not requiring the

14

conduct of a new election because of disparity in delegate allocation, the Secretary of Labor has never determined, and has no authority to determine, what the equal right to vote under 29 U.S.C. § 411(a)(1) requires. Instead of the Secretary, members like Plaintiffs have the exclusive right to sue under 29 U.S.C. § 411(a)(1) and 29 U.S.C. § 412 to reform the UFCW Constitution to comply with the equal right to vote.

### Count II: Denial of Equal Right to Vote – *Ex Officio* Delegates Serving in Preference to Elected Delegates

85. In violation of Section 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1), and by requiring the local union president and secretary treasurer in each UFCW local to serve *ex officio* as delegates, without being elected separately to such position, the UFCW deprives all members of an equal and effective right to vote for delegates of their own choosing to present their views at the Convention without having them pre-selected years in advance before the questions to be decided at the Convention are known or clear.

86. The use of *ex officio* delegates also has a disparate impact on the equal right of members to vote and run for office, in violation of Section 101(a)(1) of the LMRDA. The percentage or the proportion of *ex officio* delegates in the allotted number of delegates is greater in smaller locals. In the smallest locals, the use of *ex officio* delegates leads to the outright denial in the smallest locals of a nomination meeting and any election at all. In other locals, the *ex officio* delegates still make up a large fraction of the allotted delegates and thereby deprives the rank-and-file members of having the numbers to form candidate slates and to pool resources to express viewpoints different from the *ex officio* delegates.

87. Likewise, this practice has a disparate effect on the right to speak and debate from local to local, in violation of Section 101(a)(2) of the LMRDA, as it precludes or limits the possibility of election campaigns in which members can express their views. As such, it is unlawful

viewpoint discrimination and has the intent and effect of limiting political debate and speech without serving a purpose necessary to protect the UFCW as an institution.

88. While the Secretary of Labor has determined that the use of *ex officio* delegates will not require the conduct of a new election, or violate any provision of Title IV of the LMRDA, plaintiffs do not seek to challenge any election "already conducted" within the meaning of the law. Rather, under Section 102 of the LMRDA, 29 U.S.C. § 412, plaintiffs seek to conform the UFCW Constitution to the provisions of Section 101(a)(1) and Section 101(a)(2) of the LMRDA, over which the Secretary has no authority or jurisdiction, and which prohibit the disparate impact of a system of such large scale *ex officio* representation on the right to vote and speak.

**Count III: Denial of Equal Right to Vote –
Failure to Hold Elections and Send Delegates for Financial Reasons**

89. In further violation of the equal right to vote under Section 101(a)(1) of the LMRDA, and by the acts set forth above, the UFCW unlawfully permits its local union officers not to hold elections for all the delegates allotted to their locals or to refuse or fail to send elected delegates.

90. These *ad hoc* decisions by local officers allegedly for "financial reasons" without any criteria or review are not "reasonable rules and regulations" within the meaning of the proviso of Section 101(a)(1) for denying altogether the right to vote.

91. The UFCW is responsible for such unlawful variation from local to local in the right of members to vote for delegates at its Convention in violation of Section 101(a)(1) of the LMRDA.

**Count IV: Denial of Equal Right to Vote – Denial of Right to an Informed Vote**

92. By the acts set forth above, and in violation of Section 101(a)(1) of the LMRDA, the UFCW has no uniform practice from local to local to ensure that members are equally well

informed of their rights under the LMRDA and the right of rank-and-file members to run for delegates and right to serve as delegates if elected.

93. In contrast to some UFCW locals, which publicize such elections, other UFCW locals provide only the barest reference, often buried in small print in union magazines, not calculated to make members aware that such elections are being held or that they have the right to nominate themselves or others as delegated.

94. In addition, in violation of the right of members to an informed vote under Section 101(a)(1) of the LMRDA, the UFCW provides no information as to the issues that may be considered at such Conventions, including actions upon dues and procedures for the nomination elections of officers at the Convention.

### Count V: Denial of Right to Express Views, Arguments, and Opinions by Limitation on Number of Elections

95. In violation of Section 101(a)(2) of the LMRDA, which protects the right of members to express "views, arguments, or opinions," and to "express [at meetings of UFCW locals] views[] upon candidates in an election [held by a UFCW local]," the UFCW has maintained a system of representation that unreasonably restricts the opportunity of rank-and-file members to exercise this right, and serves no valid purpose for the UFCW as an institutions..

96. Specifically the UFCW has maintained a system that steadily reduces the number of Convention delegates who would be otherwise elected under one member one vote in larger locals, maintains *ex officio* representation that eliminates all or nearly all elections for delegates in smaller locals, allows locals to cancel elections altogether for vague financial reasons, and otherwise seeks to limit debate and expression of views that might take place both in and outside of local meetings if such elections were held.

97.     By the acts set forth above, in violation of Section 101(a)(2) of the LMRDA, the UFCW has maintained a system that seeks to limit opportunities for debate within local unions and at local meetings prior to the holding of the UFCW Convention. That system has had the intent and effect of preventing the robust political debate that the holding of the Convention should occasion, and in some cases, eliminates any debate at all.

98.     Plaintiffs do not seek any relief for harm caused by this system at prior conventions, but, with respect to all Counts, solely seek prospective relief to ensure that the system does not cause these harms going forward.

WHEREFORE, Plaintiffs pray this Court to:

    A.     Declare that under Section 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1) and by the acts set forth above, Defendant UFCW has unlawfully denied the Plaintiffs and other UFCW members of the right to an equal vote from one local to the next, including the right to an informed and uniform right to vote.

    B.     Declare that, in violation of Section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2), Defendant UFCW has unlawfully restricted or limited the ability of Plaintiffs and other members to express their views, arguments and opinions by unfair allotment of delegates, use of *ex officio* delegates, and other means, including the expression of views, arguments, and opinions at meetings of the various locals at the time candidates might have been nominated under a fair system of representation.

    C.     Order Defendant UFCW to take such actions and to submit a plan for approval of this Court to redress these violations, including amendment of the UFCW Constitution, to conform with Section 101(a) as required by Section 101(b) of the LMRDA, 29 U.S.C.§ 411(b).

D. Grant legal fees and costs to Plaintiffs and such other relief as may be appropriate.

Respectfully submitted,

Dated: December 2, 2024

By: */s/ Thomas H. Geoghegan*
Thomas H. Geoghegan
Bar No. IL0104
DESPRES, SCHWARTZ,
& GEOGHEGAN, LTD.
77 West Washington Street, Suite 711
Chicago, Illinois 60602
Phone: (312) 372-2511
Fax: (312) 372-7391
tgeoghegan@dsgchicago.com

19